[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13013-J, 16-13232-J
_____

IN RE: DENNIS D. WILLIAMS,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)
_____

Before HULL, MARCUS and JULIE CARNES, Circuit Judges.

B Y  T H E  P A N E L:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Dennis D. Williams has filed an application seeking an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255.   Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

Williams has filed two applications—one through counsel and one *pro se*—indicating that he wishes to raise one claim in a second or successive § 2255 motion. Because the applications raise substantially the same claim, we consider them together. In the applications, Williams asserts that his claim relies upon a new rule of constitutional law, citing *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), in which the Supreme Court held that the residual clause of the violent felony definition in the Armed Career Criminal Act ("ACCA") is unconstitutionally vague and that imposing an increased sentence under that provision, therefore, violates due process. He also cites *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257, 194 L. Ed. 2d 387 (2016), in which the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. Specifically, Williams argues that the district court enhanced his sentence pursuant to the residual clause of the ACCA and, as a result, violated his due process rights. He also argues that his sentence was enhanced under the career-offender guideline, and that he was subject to a mandatory life sentence under 21 U.S.C. §§ 841(b)(1)(A) and 851 and 18 U.S.C. § 3559(c), and that the ruling in *Johnson* should be extended to render those enhancements unconstitutionally vague.

2

The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

(i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

Section 4B1.1 of the Sentencing Guidelines provides that a defendant is classified as a career offender if (1) he was at least 18 years old at the time of the offense of conviction; (2) the offense of conviction was either a crime of violence or a controlled substance offense; and (3) he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). The guidelines define "crime of violence" as any offense under federal or state law that is punishable by imprisonment for more than one year and:

(1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

Under the federal "three-strikes" statute, 18 U.S.C. § 3559(c), a person who is convicted of a "serious violent felony" shall receive a mandatory sentence of life imprisonment if he has

3

previously been convicted of two or more "serious violent felonies," or one or more "serious violent felonies" and one or more serious drug offenses.    18 U.S.C. § 3559(c); *see United States v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001).  For purposes of § 3559(c), "serious violent felony" includes various enumerated crimes as well as

> any other offense punishable by a maximum term of imprisonment of 10 years or more that has an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

18 U.S.C. § 3559(c)(2)(F).

According to 21 U.S.C. § 841(b)(1)(A)(ii), a person who manufactures, distributes, dispenses, or possesses with intent to distribute 5 kilograms or more of a mixture or substance containing cocaine shall be sentenced to a term of imprisonment of 10 years to life.  21 U.S.C. § 841(b)(1)(A)(ii); *see also id.* § 841(a)(1).  Such a person shall be subject to a mandatory life sentence if he commits the offense "after two or more prior convictions for a felony drug offense have become final," and the government files an information setting forth the prior convictions pursuant to § 851.   21 U.S.C. §§ 841(b)(1)(A), 851(a).

On June 26, 2015, the Supreme Court in *Johnson* held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony.  *Johnson*, 576 U.S. at ___, 135 S. Ct. at 2557-58, 2563.   The Supreme Court clarified that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony.   *Id.* at ___, 135 S. Ct. at 2563.

4

Thereafter, in September 2015, we issued a decision in *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015), holding that the vagueness doctrine, upon which the Supreme Court invalidated the ACCA's residual clause in *Johnson*, did not similarly apply to advisory Sentencing Guidelines. We explained that the vagueness doctrine applies both to statutes that define elements of crimes and to statutes fixing sentences, but noted that "the advisory guidelines do neither." *Id.* at 1194. We then emphasized that, because the pre-Guidelines sentencing scheme that gave plenary discretion to sentencing judges did not violate the notice requirement of the Due Process Clause, advisory guidelines that merely "inform a sentencing judge's discretion also cannot violate the notice requirement." *Id.* at 1194-95. Finally, we explicitly rejected Matchett's policy-based argument that allowing the identically worded residual clause in § 4B1.2(a) to stand would upend the sentencing process by forcing sentencing courts to apply a clause that *Johnson* determined to lack precise meaning. *Id.* at 1195. We explained that

> Although *Johnson* abrogated the previous decisions of the Supreme Court interpreting the residual clause of the Armed Career Criminal Act, sentencing courts interpreting the residual clause of the guidelines must still adhere to the reasoning of cases interpreting the nearly identical language in the Act. [Matchett's] policy concern is properly addressed to the United States Sentencing Commission . . . .

*Id.* at 1195-96.

In its April 18, 2016, *Welch* opinion, the Supreme Court explained that, by striking down the ACCA's residual clause as void for vagueness, *Johnson* changed the ACCA's substantive reach and altered "the range of conduct or the class of persons that the [Act] punishes." *Id.* at ___, 136 S. Ct. at 1265 (brackets in original) (quotation omitted). Applying the retroactivity framework set forth in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and its progeny, the Court further stated that *Johnson* was not a procedural decision because it

5

"had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the [ACCA]." *Id.* Accordingly, the Court ruled that "*Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review." *Id.*

Thereafter, in *In re Griffin*, No. 16-12012, manuscript op. at 7-10 (11th Cir. May 25, 2016), we held that an applicant seeking leave to raise a *Johnson*-based challenge to his career offender enhancement, which was imposed when the Sentencing Guidelines were mandatory, did not make a *prima facie* showing that his claim satisfied the criteria of § 2255(h)(2) because he was not sentenced under the ACCA or beyond the statutory maximum for his crime. In doing so, we concluded that "logic and principles established in *Matchett* also govern . . . when the Guidelines were mandatory." *Id.* at 7. We reasoned that the Guidelines, whether advisory or mandatory, cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to limit and assist the sentencing judge's discretion. *Id.* at 7-8.

Furthermore, we concluded in *Griffin* that the Supreme Court's ruling in *Welch* did not "make[] *Johnson* retroactive for purposes of a second or successive § 2255 motion premised on the applicability of *Johnson* to a guidelines challenge, just because the guidelines challenge happens to be based on the residual clause." *Id.* at 8. We reasoned that, whereas the "application of *Johnson* to the ACCA was a substantive change in the law because it altered the statutory range of permissible sentences," a rule that extended *Johnson* to the residual clause of the career offender guideline would only establish that the guideline range had been incorrectly calculated within the statutory boundaries. *Id.* at 8-9. Thus, the extension of *Johnson* to a guidelines context would only create changes in "how the sentencing procedural process is to be

6

conduct—changes that are not entitled to retroactive effect in cases on collateral review in a second or successive § 2255 motion." *Id.* at 9.

Here, Williams was convicted by a jury in 2008 of conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii) (Count 1); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 2); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 3).   He was sentenced as a career offender under the Guidelines based on: (1) a 1989 Florida conviction on three counts of armed robbery with a deadly weapon, all of which were part of the same criminal episode, and (2) a 2004 Florida conviction for aggravated assault with a weapon and shooting at a vehicle, which were part of the same criminal episode.   He was also sentenced as an armed career criminal under the ACCA on only Count 3. Before Williams was convicted, the government filed a § 851 notice stating that Williams had the following felony drug convictions that subjected him to a mandatory life sentence for Count 1 under § 841(b)(1)(A): (1) a 1990 Florida conviction for sale of a counterfeit drug; and (2) a 1994 Florida conviction for possession of cocaine.   As a result of his sentencing enhancements from his prior drug convictions, Williams was subject to a mandatory life sentence for Count 1 under 21 U.S.C. § 841(b)(1)(A) and a mandatory consecutive five-year sentence for Count 2 under 18 U.S.C. § 924(c)(1).   In 2009, the district court sentenced Williams to two concurrent life sentences for Counts 1 and 3, and a 5-year consecutive sentence for Count 2.

To the extent Williams relies on *Johnson* to invalidate his mandatory life sentence for Count 1 under 18 U.S.C. § 3559(c), his claim fails because the record shows he was not sentenced under § 3559(c).   Instead, he was sentenced to a mandatory life sentence on Count 1 pursuant to

7

21 U.S.C. § 841(b)(1)(A).   Since the § 841(b)(1)(A) mandatory life sentence is triggered by prior convictions for a "felony drug offense," it is not even arguably affected by *Johnson*'s holding regarding the ACCA's residual-clause definition of a violent felony.

To the extent Williams relies on *Johnson* to invalidate his sentence enhancement under the career-offender guidelines, his claim also fails.   Even though the Supreme Court has held in *Welch* that *Johnson* applies retroactively to cases on collateral review, our binding precedent holds that *Welch* does not make *Johnson* retroactive for purposes of filing a successive § 2255 motion raising a *Johnson*-based challenge to the Sentencing Guidelines.   *See Griffin*, No. 16-12012, manuscript op. at 8-9; *Welch*, 578 U.S. at ___, 136 S. Ct. at 1264-65.   Furthermore, Williams cannot make a *prima facie* showing that *Johnson* applies to his career-offender claim in light of our holdings in *Matchett* and *Griffin* that the Sentencing Guidelines—whether advisory or mandatory—cannot be unconstitutionally vague.   *See Griffin*, No. 16-12012, manuscript op. at 7; *Matchett*, 802 F.3d at 1195.

Finally, as for his claim that his ACCA-enhanced sentence on his conviction for Count 3 is invalid in light of *Johnson*, Williams has made a *prima facie* showing that he meets the statutory criteria, but we nevertheless deny his application.   As the record shows, the district court did not identify which ACCA clause it used in counting Williams's three ACCA predicate convictions, and it is not clear that he has more than two predicate convictions after *Johnson*.   Accordingly, Williams has presented a *prima facie* showing that his designation as an armed career criminal under the ACCA, which subjected him to a mandatory minimum sentence of 15 years and a statutory maximum sentence of life imprisonment—which he received—for Count 3, falls within the scope of the rule announced in *Johnson*.

8

Importantly, however, Williams received a concurrent mandatory life sentence on Count 1 that was unrelated to his ACCA status. *See* 21 U.S.C. § 841(b)(1)(A). We have held under the "concurrent sentence doctrine" that, if a defendant has concurrent sentences on multiple counts of conviction and one count is found to be invalid, an appellate court need not consider the validity of the other counts unless the defendant would suffer "adverse collateral consequences from the unreviewed conviction." *United States v. Bradley*, 644 F.3d 1213, 1293 (11th Cir. 2011) (quotations omitted) (decided on direct appeal). Additionally, we have said, in the § 2255(e) savings-clause context, that a defendant could not successfully challenge his detention under the savings clause where his erroneous ACCA sentence exceeded the statutory maximum on only one count of conviction because "if a prisoner is serving multiple sentences, his detention may be legal even if one of his sentences is not." *Brown v. Warden, FCC Coleman-Low*, 817 F.3d 1278, 1284-85 (11th Cir. 2016). In *United States v. Pacchioli*, a direct appeal case, we held, in the alternative, that any error in sentencing as a result of multiplicitous counts was harmless where the arguably multiplicitous counts resulted in concurrent sentences. 718 F.3d 1294, 1308 (11th Cir. 2013). Finally, the former Fifth Circuit affirmed the denial of an initial § 2255 motion to vacate based on the concurrent sentence doctrine where the defendant attacked the validity of only one judgment of conviction, for which he was sentenced concurrently with his sentences for other violations. *Streator v. United States*, 431 F.2d 567, 568 (5th Cir. 1970).

Based on the record, it appears that Williams's potential *Johnson* claim would impact only his sentence for Count 3. Although we have not directly applied harmless error or the concurrent sentence doctrine in the context of an application to file a second or successive § 2255 motion, *see Bradley*, 644 F.3d at 1293; *Brown*, 817 F.3d at 1284-85; *Pacchioli,* 718 F.3d at 1308; *Streator*, 431

9

F.2d at 568, we have said in the § 2255(h) context that "[a]n applicant must show a reasonable likelihood that he would benefit from the new rule he seeks to invoke in a second or successive petition."  *In re Henry*, 757 F.3d 1151, 1162 (11th Cir. 2014) (citing, *inter alia*, *In re Vassell*, 751 F.3d 267, 270–71 (4th Cir. 2014) ("[W]hile our primary consideration in reviewing a request for authorization in this kind of case is whether the applicant made the requisite prima facie showing about a new rule of constitutional law, nothing in either § 2255 or § 2244 requires us to ignore other considerations and authorize the filing of a successive § 2255 motion that, for instance, would clearly be time-barred.   The statute, we conclude, simply does not require such an exercise in futility.")); *accord In re Hires*, __ F.3d __, 2016 WL 3342668, at *2 (11th Cir. June 15, 2016) ("When a petitioner seeks leave to pursue a successive § 2255 motion under § 2255(h)(2), we have held that a petitioner must demonstrate a 'reasonable likelihood' that they will benefit from a new, retroactive, and previously unavailable constitutional rule in order to make a *prima facie* showing that their application satisfies the requirements of §§ 2244(b) and 2255(h).").

In this case, although Williams has made a *prima facie* showing under *Johnson* as to Count 3, he is unable to show that he would "benefit" from *Johnson*, since he received a concurrent mandatory life sentence on Count 1 that was unrelated to his ACCA status and is unaffected by *Johnson*.   Nor has he made any showing of adverse collateral consequences in this instance. Because "nothing in either § 2255 or § 2244 requires us to . . . authorize the filing of a successive § 2255 motion that . . . would clearly be . . . an exercise in futility," *In re Vassell*, 751 F.3d at 271, we cannot grant Williams leave to file a second or successive § 2255 motion that can provide him no relief in the district court at this time.

Accordingly, Williams has not demonstrated that he will benefit from *Johnson*, and his applications for leave to file a second or successive § 2255 motion are hereby **DENIED.**